**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TARA GIONFRIDDO, *et al.*          *
                                   *
    Plaintiffs                *
                                   *     Case No. RDB 09-CV-1733
    v.                        *
                                   *
JASON ZINK, LLC, *et al.*          *
                                   *
    Defendants.               *

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs, by and through undersigned counsel, submit the following Memorandum of

Points and Authorities in support of their Motion for Partial Summary Judgment ("Motion").

## I.    INTRODUCTION

Defendants own and/or operate two bars in downtown Baltimore.  Plaintiffs are all

former employees at the bars.  Over a period of several years, Defendants unlawfully deprived

Plaintiffs of wages owed to them under federal and state law.  In some cases, Plaintiffs were

denied minimum wage because Defendants abused the "tip pool" system by systematically

skimming tips from the tip pool that belonged to bartender Plaintiffs.  In other cases, Plaintiffs

were unfairly denied overtime pay or simply not paid "straight" wages at all.  Over a period of

several years, Defendants were substantially enriched at the expense of Plaintiffs.

## II.    PROCEDURAL HISTORY

On or about July 1, 2009, Plaintiffs Tara Gionfriddo ("Gionfriddo"), Eric Gilbert

("Gilbert"), Aaron Zetzer ("Zetzer") and Astrid Garrison ("Garrison")[1] filed a Complaint against

Defendants Jason Zink, LLC and Jason Zink for: (1) unpaid wages, liquidated damages,

---

[1] Brian Emar joined the lawsuit on February 14, 2010 as an opt-in Plaintiff after Plaintiffs filed a Motion to
Facilitate Identity of Other Similarly Situated Employees which was granted on January 21, 2010.

reasonable attorney's fees, and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), (2) unpaid wages/overtime, reasonable attorney's fees, and costs under the Maryland Wage & Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq.* ("MWHL"); and (3) unpaid wages, liquidated damages, reasonable attorney's fees, and costs under the Maryland Wage Payment & Collection Law, Maryland Code Annotated, Labor and Employment Article §§ 3-501 *et seq.* ("MWPCL")[2]; (4) unpaid overtime, liquidated damages, reasonable attorney's fees, and costs under Section 16(b) of the FLSA, as amended 29 U.S.C. §§ 215 *et seq.*; and (5) for conversion[3].  After discovery commenced, Plaintiffs amended their Complaint to include Defendant JR Zink, Inc.[4] (hereafter all corporate entities and the establishments "Don't Know Tavern" and "No Idea Tavern" will be referred to as "Zink Businesses").

The parties have exchanged written discovery and all key depositions have been taken. Plaintiffs now seek summary judgment on the issue of Defendants' liability on Plaintiffs' FLSA and MWHL claims, judgment on Garrison's overtime claim under the FLSA and MWHL and on her unpaid wage claim under the MWPCL, and judgment on Emar's overtime claim and unpaid minimum wage claim under the FLSA and MWHL.

## III.    MATERIAL FACTS NOT IN DISPUTE

Mr. Zink is owner and operator of No Idea Tavern in Baltimore, Maryland.  *See* Deposition of Jason Zink ("Zink Dep."), excerpts of which are attached hereto as Exhibit 1, at p. 14 ll. 5-12.   JR Zink, Inc. is a Maryland corporation owned solely by Mr. Zink.  Zink Dep. at p.

---

[2] Plaintiffs have sought to amend their Complaint for the second time to add Plaintiff Astrid Garrison to the Count for unpaid wages under the MWPCL.  The Motion for Leave to file the Second Amended Complaint has not yet been ruled upon, but Plaintiffs seek summary Judgment for Plaintiff Garrison pursuant to the MWPCL in anticipation that their Motion for Leave will be granted.
[3] Plaintiffs do not seek summary judgment on their claim for Conversion.
[4] JR Zink, Inc. is a newly added Defendant that was served on September 7, 2010.

20  ll. 3-19.  JR Zink, Inc. owns and operates No Idea Tavern.  *Id.*  Mr. Zink is sole owner of

Jason Zink, LLC, a Maryland limited liability company.  *Id*. at p. 22 ll. 10-20.  Jason Zink, LLC

owns and operates Don't Know Tavern.  *Id*. at 23 ll. 2-17.  *See also* Continued Deposition of

Jason Zink ("Zink Dep. 2"), excerpts of which are attached hereto as Exhibit 2, at pp. 28-29.

 Mr. Zink supervised all Plaintiffs.  *See* Defendant Jason Zink's Answers to Plaintiff Tara

Gionfriddo's First Set of Interrogatories, attached hereto as Exhibit 3, at Answer No. 12.  Mr.

Zink determined the rate and method of Plaintiffs' pay.  Zink Dep. at p. 91 ll. 1-21, p. 98 ll. 14-

21.  Mr. Zink made all decisions regarding him taking a share of tips for himself when he worked

as a bartender.  *Id*. at p. 89 ll. 17-20.  Defendants did not maintain complete time records of

hours worked by Plaintiffs during the relevant time period.  *Id*. at pp. 42-46; *see also* Exhibit 3 at

Answer No. 8.

 Mr. Zink concedes that he skimmed tips from the tip pool on nights that he "bartended."

Zink Dep. at p. 70 ll. 8-18.  Mr. Zink also bartended at No Idea Tavern during the relevant time

period.  *Id.* at p. 85 ll. 6-17.  Mr. Zink also admits that he took tips from the bartenders' tip pool

at No Idea Tavern.  *Id.*

 At all times relevant, Zink Businesses constituted an enterprise engaged in interstate

commerce, earning gross income in excess of $500,000.00.  Zink Dep. at pp. 36-37.

**IV.** **ARGUMENT**

**A.** **SUMMARY JUDGMENT**

 The standard for Summary Judgment is well-known to this Court. Summary Judgment

shall be granted if there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Chelates Corp. v. Catrett,* 477 U.S.

317, 322 (1986).  The burden is upon the non-moving party to demonstrate that there are material

facts in dispute.  *Chelates,* 477 U.S. at 324.  A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In responding to a motion for summary judgment, a non-moving party must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Anderson*, 477 U.S. at 252.  A party cannot establish the existence of a dispute merely by making formal denials or general allegations of disputed facts.   *Seaboard Surety Co. v. Richard F. Kline, Inc.,* 91 Md. App. 236, 243 (1992).  Moreover, the evidence offered to show the existence of a dispute of fact must be sufficiently detailed and precise to enable the trial court to make its ruling as to the materiality of the proffered fact.  *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 738 (1993).  Even if there are disputed facts, they will not bar on the determination of a motion for summary judgment unless they are material.  Thus, the threshold question in resolving a summary judgment motion is whether there is a dispute of material fact.  *Warner v. German,* 100 Md. App. 512, 516 (1994).  A fact is material if the outcome of the case would be different depending on how the fact finder resolved the disputed fact.  *Kessling v. State,* 288 Md. 579, 583 (1980).  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50.

### B.      EACH DEFENDANT WAS PLAINTIFFS' "EMPLOYER" UNDER THE FLSA, MWHL AND MWPCL.

"Any person acting directly or indirectly in the interest of an employer in relation to any employee" is liable as an "employer" for purposes of the FLSA.  29 U.S.C. §203(d).[5]  The United States Supreme Court has commented that the FLSA defines "employer" expansively and

---

[5] The definition of an "employer" in the MWHL, the state's equivalent of the FLSA, is almost  identical. *Watkins v. Brown*, 173 F. Supp. 2d 409, 415-17 (D.Md. 2001).

with a striking breadth, in order to effectuate the remedial purposes of the FLSA.  *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992).  In fact, the Supreme Court has referred to the FLSA's definition of "employer" as "the broadest definition that has ever been included in any one act."  *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945).

The Fourth Circuit notes that Congress intended to disregard any corporate shield as a defense, and the corporate veil does nothing to protect an individual employer from liability for an FLSA violation.  *Brock v. Hamad*, 867 F. 2d 804, 808 n. 6 (4th Cir. 1989) (*citing Donovan v. Agnew,* 712 F. 2d 1509 (1st Cir. 1983)).   Liability may be found in corporate shareholders, officers, or owners who participate substantially in management.  That is especially true for individuals who have participated in the very decision that violates wage payment law.  *Donovan v. Agnew*, *supra*, at 1514.  Even an intermediate supervisor has been found liable as an "employer," where it was he who improperly blocked wage payments.  *Riordan v. Kempiners*, 831 F.2d 690, 694-5 (7th Cir. 1987).

## Mr. Zink was Plaintiffs' Employer

The issue of an individual qualifying as an "employer" has been thoroughly investigated by the Courts.  The Fourth Circuit has held that individuals may be held liable as "employers" even without "piercing the corporate veil."  *See, e.g., Brock v. Hamad, supra*, at 808; *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir.1986).

Plaintiffs are permitted to file suit against all of their "employers"; indeed, Plaintiffs' several employers are jointly and severally liable for Defendants' failure to pay proper overtime pay.  As the Court in *Sandom v. Travelers Mortg. Services, Inc.,* 752 F. Supp. 1240 (D.N.J. 1990), noted:

> The fact that the individual defendants in the instant case were
> employees of the corporate "employer" does not insulate them

> from potential liability, because "the overwhelming weight of
> authority is that a corporate officer with operational control of a
> corporation's covered enterprise is an employer along with the
> corporation, jointly and severally liable under the FLSA for unpaid
> wages."

(*Sandom* at 1251, fn. 9)

At all times, Mr. Zink was owner and operator of No Idea Tavern and Don't Know
Tavern, via two separate companies, wholly owned and operated by him, JR Zink, Inc. and Jason
Zink, LLC.  Zink Dep. at p. 22 ll. 10-20, at p. 14 ll. 5-12; Zink Dep. 2 at pp. 28-29.  Jason Zink,
LLC owns and operates Don't Know Tavern.  Zink Dep. at p. 23 ll. 2-17.  JR Zink, Inc. owns
and operates No Idea Tavern.  *Id.* at p. 20 ll. 3-19.  JR Zink, Inc. and Jason Zink, LLC
interchangeably handled the payroll for all employees of Don't Know Tavern for the years 2007
through 2009.[6]

Plaintiffs worked for Mr. Zink at his taverns, and he determined Plaintiffs' methods and
rates of pay.  *See* Exhibit 3 at Answer No. 12.  At all times, Mr. Zink supervised Plaintiffs'
activities.  Zink Dep. at p. 91 ll. 1-21, p. 98 ll. 14-21.  Because Mr. Zink was integrally
responsible for setting the terms and conditions of Plaintiffs' employment, including all aspects
of their hours and pay, Mr. Zink was Plaintiffs' "employer" for purposes of the FLSA and
MWHL.

## Zink Businesses were Plaintiffs' Joint Employers

Separate persons or entities that share control over an individual worker may be deemed
*joint employers* for purposes of the FLSA.  Under the FLSA an employee may have more than

---

[6] Such similarly sounding companies created confusion  regarding which company operated which tavern. However,
Mr. Zink  regarded his companies as one unified business entity and rarely differentiated between the two
companies, including paying employees of both bars through the payroll of one company.  In fact, Mr. Zink paid all
employees of both bars at one point through "Jason Zink, Inc." which is not a registered corporation in the State of
Maryland and appears to be a legal fiction.  Mr. Zink testified that the payroll company must have made a mistake
with the name, and it should have been "Jason Zink, LLC" for payroll purposes.  Zink Dep. 2 pp. 25-28.  Indeed, W-
2 forms were issued to employees by their fictitious employer, Jason Zink, Inc. Under these circumstances, these
companies collectively must be considered one "enterprise" for FLSA purposes.

one employer.  According to the Department of Labor regulations that implement the FLSA, "[i]f the facts establish that the employee is employed jointly by two or more employers, i.e. that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employees work for all of the joint employers during the workweek is considered as *one employment* for purposes of the Act."  29 C.F.R. § 791.2(a).

At all times relevant, Zink Businesses employed the Plaintiffs in this matter.  Mr. Zink testified that Plaintiffs were employees or one or both taverns, both owned by Zink Businesses, comprised of companies solely owned by Mr. Zink.  Zink Dep. at p. 139 ll. 10-12; p. 178 ll. 18-20;  pp. 185-186.  Zetzer worked at both bars owned by Zink Businesses and received paychecks from Jason Zink, LLC and JR Zink, Inc.  *See* Zetzer paystubs attached hereto as Exhibit 4.  Emar worked simultaneously at both bars owned by Zink Businesses.  *See* Brian Emar's Answers to Interrogatories attached hereto as Exhibit 5 at Answer No. 11.

Payroll for Don't Know Tavern, while it was owned and managed by one entity under Zink Businesses, was being paid through the payroll of another Zink Businesses entity.  Zink Dep. 2 at p. 28 ll. 6-21.

For the aforementioned reasons, all Zink Businesses and Mr. Zink were Plaintiffs' "employer" under the FLSA and MWHL.

## **MWPCL**

Plaintiffs have filed suit against Mr. Zink, individually, as Plaintiffs' employer under the MWPCL §§ 3-501 *et seq*.  "Employer", as the term is defined in § 3-501 of the MWPCL, includes "any person who employs an individual in the State or a successor of the person."  The term "employ," pursuant to § 3-101, includes (i) allowing an individual to work; and (ii) instructing an individual to be present at a work site.  The term "employer" is construed broadly.

*Baltimore Harbor Charters, Ltd. v. Ayd*, 134 Md.App. 188, 208 (2000) (*rev'd on other grounds,* 365 Md. 366 (2001)).  Although the term "employer" does not include "a mere supervisor of another employee," *Watkins v. Brown*, 173 F.Supp.2d 409, 415-16 (D.Md. 2001), the term must be construed to include all actual employers of Plaintiffs.

To be sure, Mr. Zink, the sole owner/operator of Zink Businesses, who hired Plaintiffs and promised to pay Plaintiffs, falls within this definition of employer.  The argument for dual employer liability under the MWPCL to individual employers as well as corporate employers is neither unique nor unprecedented.  In *Pearsall v. Philadelphia Vascular Institute, et al.,* Case No. BPG-08-0760*,* in the United States District Court for the District of Maryland, Magistrate Judge Gesner held the individual defendant, Dr. McGuckin, personally liable as an employer under the MWPCL.

Since the *Pearsall* decision, other courts have been persuaded to include individual defendants within the MWPCL's definition of employer.  In another case in this Court, *Ferrufino, et al. v. Gettier Commercial, Inc. et al.,* Case No. PJM-09-0528*,* three (3) laborers sued the company they worked for as well as its President individually for unpaid wages.  Judge Messitte denied a motion to dismiss filed by the individual defendant.

In another case under the MWPCL, in the Circuit Court for Baltimore City, Maryland, *Powell, et al. v. Serv-U-Inc., et al.,* Case No. 24-C-09-002015, three (3) truck drivers sued the company they worked for and two individuals, the President and the Vice President of the company, for unpaid wages under the MWPCL.  Shortly after filing the Complaint, the individuals filed Motions to Dismiss, contending that personal liability was not proper under the MWPCL.  The Circuit Court considered the arguments and then denied the Motions to Dismiss. The Court's denial of the Motions was based on the Court's finding that the individual

8

defendants supervised the plaintiffs and determined their rate and method of payment. *See* Copy of Order attached hereto as Exhibit 6.

Personal employer liability on Mr. Zink under the MWPCL in the instant case is premised on similar facts as those presented in *Pearsall, Ferrufino,* and *Powell*. Here, Mr. Zink was at all times relevant the person who was responsible for all decisions regarding Plaintiffs' hours and work conditions, as well as the rate and method of Plaintiffs' compensation. Further, Mr. Zink kept and controlled, at all times relevant, all of Plaintiffs' employment records and made all employment decisions with respect to Plaintiffs. In light of the facts in this case, and in consideration of decisions of other courts in similar factual circumstances, individual liability for Mr. Zink under the MWPCL is proper.

For the reasons set forth above, Zink Businesses and Mr. Zink must be found to be Plaintiffs' employers for the purposes of the FLSA, MWHL, and MWPCL.

### C.    EMAR WAS NOT PAID MINIMUM WAGE AS REQUIRED BY LAW.

Defendants were obligated to pay Emar an hourly wage at least equal to the Federal Minimum Wage, *viz.*, $5.85 per hour between July 24, 2007 and July 23, 2008. MWHL § 3-413 required Defendants to pay Emar the relevant minimum wage5 per hour for the time period he was employed by Defendants.

Defendants did not pay Emar an hourly wage at all. Emar did not receive an hourly wage, but was compensated strictly by tips. Zink Dep. at p. 186 ll. 14-19. Emar worked for Defendants from February 2007 through December 2007. Therefore, Emar is owed minimum wage during the relevant time period. Minimum wage in 2007 was $5.15 per hour through July 27, and then $5.85 per hour for the duration of the year. Emar worked more than forty (40) hours per week each week of his employment with Defendants, and was paid nothing. Emar is

owed minimum wage in a total amount of $11,000.00 (February – July, 2007: 25 weeks x 40 hours/week = 1,000 hours x $5.15/hour = $5,150.00; (August – December, 2007: 21 weeks x 40 hours/week = 840 hours x $5.85/hour = $5,850.00).  Emar's W-2 for 2007 reflects payment from the Zink Businesses in the amount of $803.64 for 2007, which Plaintiffs will credit against Emar's total unpaid wages.  Therefore, Emar is owed unpaid wages from February 2007 to December of 2007 in the amount of $10,196.36 ($11,000.00 - $803.64 = $10,196.36).

### D.     GARRISON WAS NOT PAID ALL OF HER WAGES UNDER THE MWPCL.

At the commencement of Garrison's employment with Defendants, Defendants promised to pay Garrison $10.50 per hour, and then $12.50 per hour when she was promoted to *sous* chef in December of 2008.  *See* Astrid Garrison's Answers to Interrogatories, attached hereto as Exhibit 7, at Answer No. 14.  Garrison agreed to work for Defendants, and continued in their employ, with the expectation that she would be paid her regularly hourly rate for all non-overtime hours worked.  Defendants failed to pay Garrison her regularly hourly rate for all hours worked.  Garrison worked a total of two hundred and seventy-six hours (276) for which she was not paid at all.  *See* Garrison Time and Pay Records and Plaintiffs' Spreadsheet summarizing amounts owed, attached hereto as Exhibit 8.

Maryland Code, Labor and Employment Article, § 3-505, requires employers to pay employees "all wages due for work that the employee performed before the date of termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."  In this matter, despite Defendants' obligation to pay Garrison her wages at her regular hourly rate of pay, and Garrison's continued employment and reliance thereon, Defendants failed to ever pay Garrison for 276 hours of work.  *See* Exhibit 8.

Accordingly, Garrison earned, and is owed, unpaid wages in the amount of $4,513.89.  *See* Exhibit 8.

Maryland Code, Labor and Employment Article, § 3-507.1, governs the civil remedy upon a violation of the MWPCL by an employer.  The Section states, in relevant part, as follows: "If…an employer withheld the wage of an employee in violation of [the MWPCL] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."  § 3-507.1.  In this matter, Defendants' failure to pay Garrison her wages was not the result of *any* dispute between Garrison and Defendants, let alone a *bona fide* dispute.  As a consequence, this Court should award Garrison unpaid wages in the amount of $4,513.89.

> **E.**     **PLAINTIFFS EMAR AND GARRISON WORKED OVERTIME BUT WERE NOT COMPENSATED BY DEFENDANTS AS REQUIRED BY LAW.**

Both the FLSA and the MWHL require employers to pay covered employees one-and-one-half (1½) times their "regular rate" of pay for each hour or fraction thereof worked in excess of forty (40) during any given workweek.  29 U.S.C. § 297(a)(1); Maryland Code, Labor and Employment Article, §§ 3-415 and 3-420.  Defendants' records and testimony unequivocally prove that Emar and Garrison worked more than forty (40) hours per week but were not paid overtime at the legally required overtime rate.  The evidence is as follows.

<u>**Evidence of the Number of Hours Worked by Plaintiffs**</u>

Garrison's time records and pay records reflect that Defendants failed to pay one-and-one-half (1½) times her hourly rate of pay.  *See* Exhibit 8.  In fact, Mr. Zink admitted that Garrison worked overtime.  Zink Dep. at p. 96 ll. 14-19, p. 156 ll. 3-7.  Mr. Zink also stated that he had "no problem paying overtime to anybody."  *See* Facebook message attached hereto as

Exhibit 9.   Finally, Emar testified that he worked overtime, for which he was not compensated at all.  *See* Exhibit 5 at Answer to Interrogatory No. 12.

For the time period February – July 2007, Emar worked approximately five (5) hours of overtime per week, for which he was entitled to be paid $7.725/hour[7].  This totals $38.63 per week ($7.725/hour x 5 hours/week) in unpaid overtime wages for the 25 weeks from February 2007 through July 2007, a total of $965.63.  For the time period August – December 2007 (21 weeks), Emar worked approximately seven and a half (7.5) hours of overtime each week, for which he is owed an additional amount of $1,382.06 (7.5 hours/week x 21 weeks x $8.775/hour)[8].

Garrison was paid straight time for all hours worked over forty (40) per week.  *See* Exhibit 8.   Garrison is owed $758.83 in unpaid overtime.  *Id.*

Defendants did not properly pay Emar and Garrison for overtime hours worked.  Emar and Garrison regularly worked over forty (40) hours per week yet were paid nothing, or only their regular hourly rate, for overtime hours worked.  As a consequence, Defendants are liable to Emar and Garrison for all overtime hours worked.  Defendants are liable to Garrison in the amount of $758.83.  Defendants are liable to Emar in the amount of $2,347.69.

## F.    DEFENDANTS' WAGE PRACTICES VIOLATE THE FLSA

Defendants state in discovery responses that they do not believe they owe Plaintiffs wages.  *See* Exhibit 3 at Answers Nos. 14, 15, and 17.  Mr. Zink testified that he does not owe the Plaintiffs any money because "they've been paid the correct amount of money."  Zink Dep. at p. 90 ll. 12-15.

---

[7] Minimum wage during the relevant time period was $5.15 per hour.  Overtime under the MWHL and FLSA is calculated at 1.5 times minimum wage ($5.15x 1.5=$7.725).
[8] Minimum wage during the relevant time period was $5.85 per hour. Overtime under the MWHL and FLSA is calculated at 1.5 times minimum wage ($5.85x 1.5=$8.775).

Defendants argue they utilized the "tip credit," as set forth in 29 U.S.C. § 203(m) and § 203(t), as a means of compensating the Bartender Plaintiffs, i.e. Gionfriddo, Emar[9], Gilbert and Zetzer.   A tip pooling arrangement, if properly set up and administered, permits the employer to pay a small hourly wage, with the balance of the minimum wage being paid through the tips.  29 U.S.C. § 203(m).  The Bartender Plaintiffs' tips, and the tips for all other bartenders at Zink Businesses, were "pooled" every evening and distributed to the bartenders who worked that evening.  Zink Dep. at p. 91 ll. 4-13.  When tips were paid out, the Bartender Plaintiffs received a portion of the tips according to the number of hours each worked.

However, Mr. Zink, owner and operator of Zink Businesses, regularly and routinely skimmed a portion of tips from the tip pool when he claims he was bartending at the taverns. Mr. Zink included himself in the distribution of tips from the "tip pool."  *Id.* at p. 80 ll. 1-21.  Mr. Zink took a share of the "tip pool" reserved for the bartenders even though Mr. Zink is owner of the Zink Businesses and ineligible for a distribution of the tips.

### Employers Cannot Participate in the Tip Pool

Employers are not permitted to receive any portion of tipped employees' collected gratuities.  *See* 29 C.F.R. § 531.35 ("whether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick-back' is made in cash or in other than cash.").  Under the FLSA, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an

---

[9] As stated above, Emar did not receive the small hourly wage at all, but his tips were still pooled according to the tip pool arrangement.

employee." 29 U.S.C. § 203(d).  Thus, if an employer or its agent partakes in a tip pool

arrangement, the tip pool is invalid and no credit is given to the employer for the tips received by

the employees.  *See* 29 C.F.R. § 531.35 and *Chung v. New Silver Palace Restaurant, Inc.,* 246

F.Supp.2d 220 (S.D.N.Y. 2002).

To assist the determination of whether a party is an employer or its agent for purposes of

this analysis, many courts utilize the "economic reality" test, which considers "whether the

alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8,

12 (2nd Cir. 1984). Under this test, no one factor is dispositive and control may be exercised on a

periodic basis without eliminating employer or employer agent status.  *Herman v. RSR Sec.*

*Servs., Ltd*., 172 F.3d 132, 139 (2[nd]Cir. 1999).

In *Chung,* 246 F.Supp.2d 220, a group of waiters sued a restaurant and its principals to

recover tips they were forced to share with management, who were claimed to be plaintiffs'

"employer."[10]  In *Chung*, the defendants argued that "the tip-pooling arrangement was legal

under section 3(m), which allows the pooling of tips among employees who customarily receive

tips."  *Id.* at 229.  The defendants alleged that because the employers were acting in positions

that "traditionally received tips, and because they performed traditional service functions such as

seating customers, delivering food and clearing tables, their receipt of a share of the tip pool did

not violate section 3(m)."  *Id.*

The Court soundly and unequivocally rejected this contention.  The Court stated that

---

[10] Section 3(d) of the FLSA, 29 U.S.C. § 203(d), defines "employer" as "any person acting directly or indirectly in
the interest of an employer in relation to an employee."   The critical legal issue in this case is whether Mr. Zink can
maintain the dual status of a "tipped employee" entitled to share in the tip pool and the "employer" who cannot
legally share in the tip pool arrangement at the same time.  Clearly, he cannot be both.

"defendants cannot ascribe to 'tradition' that which has been adjudged to be illegal, and the practice of forced sharing of tips with management is such an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping." *Id.* The Court observed further that "[s]ection 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips….Congress gave employers of tipped employees a simple choice: either allow employees to keep all the tips they receive, or forgo the tip credit and pay them the full hourly wage." *Id.* at 230.

   *Chung* is not an outlier case, but represents the reasoned opinions of other Courts that have considered this issue and the Department of Labor as well.  As one court has observed:

>       Employers may not take advantage of the tip credit unless the employee has been allowed to "retain" all the tips that the employee received. § 203(m) (1998). "Thus, the effect of the language of [§ 203(m) ] precludes an agreement between an employer and a 'tipped employee' that any part of tips received by such employee belongs to the employer and must be turned over to the employer." FIELD OPERATIONS HANDBOOK § 30d01(a); see also EMPLOY. COORD. ¶ C-14,115. Courts have interpreted this requirement to mean that an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips. *See Tiffany English Pub*, 597 F.2d at 467-68 (employees were entitled to receive from their employer the full minimum wage where they were not allowed to keep all of the tips they received) (citing *Marriott Corp.*, 549 F.2d at 304-05); *Wright v. U-Let-Us-Skycap Servs., Inc.*, 648 F.Supp. 1216, 1217 (D.Colo.1986) (agreement that employees turn in all their tip income to the employer, so that employer could pay them the minimum wage from this sum but retain the difference, was in "blatant contravention" of § 203(m)); *Marshall v. Krystal Co.,* 467 F.Supp. 9, 13 (E.D.Tenn.1978) (restaurant could not consider its employees' tips as a portion of their wages where the employees were not permitted to keep all the tips they received).

*Davis v. B & S, Inc.*, 38 F.Supp.2d 707, 714 (N.D.Ind.1998).

   Moreover, it is no defense that the Bartender Plaintiffs may have received more than minimum wage, notwithstanding the tips improperly skimmed by Mr. Zink.  *See Martin v.*

*Tango's Restaurant, Inc*., 969 F.2d 1319, 1323 (1st Cir.1992) ("It may at first seem odd to award

back pay against an employer ... where the employee has actually received and retained base

wages and tips that together amply satisfy the minimum wage requirements.  Yet Congress has in

section 3(m) expressly required notice as a condition of the tip credit and the courts have

enforced that requirement.")

As stated above, Mr. Zink as owner and "employer" was not entitled to participate in the

tip pool set aside for customarily tipped employees.  Having participated in the tip pool and

taken a portion of the tips belonging to the customarily tipped employees, Mr. Zink effectively

destroyed the tip credit.  As a consequence, all Bartender Plaintiffs are owed the full minimum

wage for all hours worked during the relevant time period.

### Mr. Zink Cannot Be an Owner and a Tipped Employee

Defendants claim that Mr. Zink was acting as a bartender, a tipped employee position,

when he was taking tips from the tip pool.  Defendants contend that Mr. Zink should have been

able to take tips, and that he did not violate the tip pool by taking a portion of the bartenders'

tips.  As the Courts in *Chung* and *Davis* have ruled, however, this practice is clearly illegal, in

violation of the FLSA, invalidates the tip pool, and causes the loss of the tip pool credit.

Moreover, Defendants were knowingly violating the law.  On several occasions, Mr. Zink was

told that he could not take tips as part of the tip pool, as he was the owner and operator of the

businesses.  Zink Dep. at p. 107 ll. 1-16.  Mr. Zink even posted a question on a legal website,

asking whether or not it was against the law for him to be involved in a tip pool.  Zink Dep. 2 at

pp. 7-8.  Mr. Zink received a response indicating that he could not, as owner of a restaurant or

bar, participate in the tip pool.  *Id.* at p. 8.  Mr. Zink ignored this advice, and in fact, continues

even now to take tips from the tip pool.  Zink Dep. at p. 92 ll. 14-21.  The general manager of

16

Don't Know Tavern, who performs all the duties of the bartenders, does not participate in the tip pool.  *See* Deposition of Steve Gronowski ("Gronowski Dep."), excerpts of which have been attached hereto as Exhibit 10. at p. 31 ll. 1-21.  In fact, Mr. Zink admitted to Mr. Gronowski that that what he, Mr. Zink, was doing could possibly be construed as being illegal.  *Id.* at p. 44 ll. 5-19.

Finally, § 203(m) requires that, for a tip pool to be valid, the employees must be informed by the employer of the tip credit provisions.  Mr. Zink claims to be a tipped "employee" for purposes of receiving a share of the tip pool.  Mr. Zink made the decision himself regarding reserving a share of the tips from the tip pool for himself when he claims he was working as a bartender.[11]  Zink Dep. at p. 89 ll. 17-20.  Furthermore, Mr. Zink did not have to clock in or clock out, as the other Bartender Plaintiffs had to do.  *Id.* at p. 66 ll. 2-10.  Mr. Zink's general manager of Don't Know Tavern, who performs all the duties of the bartenders, does not participate in the tip pool.  Gronowski Dep. at p. 31 ll. 1-21.  Mr. Zink also was not treated the same as other employees – he would walk out of the bar and go to other bars down the street – or he would simply chat up the patrons in his bars.  *Id.* at p. 38 ll. 1-21.  Mr. Zink also did not have to pay for meals at the taverns, where other employees paid for their food.  *Id.* at pp. 52-53.

If Mr. Zink is an "employee" and not the "employer" for purposes of sharing Plaintiffs' tips, he cannot at his convenience become the "employer" when it comes to providing notice under § 203(m).  *Davis*, 38 F.Supp.2d at 718.  Failing to provide proper notice as the "employer," in and of itself, invalidates the tip pool.  One way or another, the tip pool credit cannot be afforded to Defendants, Defendants failed to properly compensate the Bartender Plaintiffs pursuant to the FLSA, and full minimum wage is owed to the Bartender Plaintiffs,

---

[11] Plaintiffs take issue with the bartending work allegedly done by Mr. Zink but do not believe that it is a material fact in dispute since Mr. Zink, as a matter of law, cannot be both and "employer" and a "tipped employee" simultaneously, regardless of how many hours he spent bartending.

minus the small tipped employee wage that was received[12].

### G.  PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES

Liquidated damages in an equal amount to unpaid minimum wages and overtime is generally awarded for violations of the FLSA.  *See Richard v. Marriott Corp.,* 549 F.2d. 303, 305 (4th Cir.1977).  The exception to this general standard is if an employer can meet the high burden of showing that its FLSA violation was in good faith and that the employer had reasonable grounds for believing it was not in violation of the FLSA.  In such a circumstance, the Court ***may***, in its discretion, choose not award liquidated damages.  *Id.*  In the instant case, however, Defendants do not have a good faith reasonable ground for their failure to properly pay Plaintiffs pursuant to the requirements of the FLSA.

The Fourth Circuit has held that a grant of liquidated damages is the "norm" in cases where the FLSA is violated.  *Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir. 1997).  The employer "bears the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict."  *Wright v. Carrigg,* 275 F.2d 448, 449 (4th Cir. 1960).  Courts hold employers to a high standard in determining whether good faith and reasonable grounds have been shown.  *Williams v. Maryland Office Relocators,* 485 F. Supp. 2d 616, 620. (D.Md. 2007).  The burden "is a difficult one to meet…and [d]ouble damages are the norm, single damages the exception."  *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 71 (2nd Circ. 1997).  "It is not enough to plead and prove ignorance of the wage requirements.  Knowledge will be imputed to the offending employer…Nor does the complete ignorance of the possible applicability of the FLSA shield the employer from liability for liquidated damages.  Good faith requires some duty to investigate potential liability under the

---

[12] Bartender Plaintiffs were paid a small hourly wage of $3.08 per hour.

FLSA." *Rogers v. Savings First Mortgage,* 362 F.Supp.2d 624, 638 (D.Md. 2005).  Where a question is complex or uncertain regarding the compensation of the employee, an employer must show at the least a diligent investigation into the issues and a conclusion not to pay overtime based upon the results of the investigation.  *Williams*, 485 F. Supp. 2d at 620.

In the instant case, Defendants never took investigative measures to attempt in good faith to pay Plaintiffs pursuant to the requirements of the FLSA.  Defendants have only proffered that they believed they were paying Plaintiff properly.  Mr. Zink has been in the business of running taverns for at least five years.  Zink Dep. at p. 99 ll. 8-16.  Mr. Zink simply paid bartenders "what [he] always got paid as a bartender." *Id.* at p. 99 ll. 11-16.  Mr. Zink made no effort, prior to the lawsuit, to determine how to pay Plaintiffs in compliance with the law. *Id.*  In fact, Mr. Zink told the general manager of Don't Know Tavern that he knew that what he was doing could possibly be construed as being illegal.  Gronowski Dep. at p. 44 ll. 5-19.

Mr. Zink's own self-serving, subjective and non-educated belief does not constitute the "good faith" necessary to avoid the imposition of liquidated damages.  In *Donovan v. Kentwood Development,* 549 F. Supp. 480, 489 (D. Md. 1982), this Court awarded liquidated damages even when the employer claimed they acted in good faith reliance on the language of the FLSA.  Here, Defendants do not even allege that they relied on the language in the FLSA, any applicable exemption, or any implementing regulation contained in the C.F.R.  Mr. Zink went so far as to post a question regarding his participation in the tip pool on a legal website, where he was advised his actions were illegal under the FLSA. *See*  Web posting attached hereto as Exhibit 11 and Zink Dep. 2 at pp 4-16.  Mr. Zink continues to participate in the tip pool despite being that what he was going was illegal.  Zink Dep. at p. 92.

In fact, Defendants have failed to identify a single case which supports their position that

an "employer" can simultaneously be a "customarily tipped employee" eligible to participate in a tip pool, as Mr. Zink alleges he is permitted to do.[13]  In the absence of even a colorable showing of good faith, Plaintiffs are entitled to recover liquidated damages.

### V.     CONCLUSION

Plaintiffs ask this Court to declare that Defendants are liable, jointly and severally, to Plaintiffs for violations of the FLSA and MWHL in amounts to be determined; Defendants are liable to Garrison for overtime under the FLSA and MWHL in the amount of $758.83, and unpaid wages under the MWPCL in the amount of $4, 513.89; and Defendants are liable to Emar for unpaid minimum wages under the FLSA and MWHL in the amount of $10,196.36, and overtime under the FLSA and MWHL in the amount of $2,347.69.  For the foregoing reasons, Plaintiffs pray that this Honorable Court grant Plaintiffs' Motion for Partial Summary Judgment.

Respectfully submitted,

_____/s/_____
Philip B. Zipin, Bar No. 03932
Meredith R. Philipp, Bar No. 29153
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 301-587-9397
Email: pzipin@zipinlaw.com
            mphilipp@zipinlaw.com

*Counsel for Plaintiffs*

---

[13] Plaintiffs' counsel has looked for any case, statute, or C.F.R. upon which Defendants could base their defense. Despite diligent research efforts, undersigned counsel have been unable to locate any authority which would permit an employer/owner of a restaurant or bar to participate in a tip pool, whether or not that employer/owner claimed to be performing some of the duties of his employees.  Likewise, Defendants have failed to cite any case, statute or C.F.R. which supports their position.