IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| TARA GIONFRIDDO, *et al.* | * |
| Plaintiffs, | * |
| v. | *    Civil Action No.: RDB-09-1733 |
| JASON ZINK, LLC, *et al.* | * |
| Defendants. | * |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## <u>MEMORANDUM OPINION</u>

On July 1, 2009, Plaintiffs Tara Gionfriddo, Eric Gilbert, Aaron Zetzer, and Astrid
Garrison filed this collective action against Defendants Jason Zink, Jason Zink, LLC, and JR
Zink, Inc. for alleged unlawful wage and hour practices pursuant to the Fair Labor Standards
Act, 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law, MD. CODE ANN. LAB. & EMPL.
§§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law, MD. CODE ANN. LAB. &
EMPL. §§ 3-501 *et seq.*  Currently pending before this Court is Plaintiffs' Motion for Partial
Summary Judgment (ECF No. 45), Defendants' Cross Motion for Summary Judgment (ECF No.
51), Defendants' Motion to Decertify the collective action (ECF No. 61), and Defendants'
Motion to Dismiss Plaintiffs' Second Amended Complaint, or in the alternative, Defendants'
Motion for Summary Judgment (ECF No. 66).  This Court has reviewed the record, as well as
the pleadings and exhibits, and conducted a hearing on February 9, 2011, pursuant to Local Rule
105.6 (D. Md. 2010).  The fundamental question in this case is whether the FLSA expressly
prohibits an owner-employer from participating in employee tip pools.  This is an issue of first
impression in this District and in the Fourth Circuit.  For the reasons that follow, this Court

follows the clear weight of authority and holds that an owner-employer may not participate in such tip pools. Accordingly, for the reasons stated below, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 45) is GRANTED in part and DENIED in part; Defendants' Cross Motion for Summary Judgment (ECF No. 51) is GRANTED in part and DENIED in part; Defendants' Motion to Decertify (ECF No. 61) is GRANTED; and Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 66) is DISMISSED as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Jason Zink is the owner and operator of two taverns, the Don't Know Tavern, and the No Idea Tavern, which are both located in the Federal Hill neighborhood of Baltimore City. More specifically, Mr. Zink is the sole owner of both JR Zink, Inc., a Maryland corporation, that owns the No Idea Tavern ("No Idea") and Jason Zink, LLC, a Maryland limited liability company that owns the Don't Know Tavern ("Don't Know"). JR Zink, Inc. and Jason Zink, LLC, in conjunction with Mr. Zink are the Defendants in this case (collectively, "Defendants"). Mr. Zink possesses management authority and "generally supervises and controls both Don't Know and No Idea" (collectively, "Taverns"). Defs.' Cross Mot. Summ. J. at 13, ECF No. 51-1. In addition to operating and supervising the Taverns, Mr. Zink works as a bartender, serving drinks to and conversing with the patrons, at the two establishments. In conjunction with his working as a bartender, Mr. Zink receives tips from tavern patrons and contributes those tips to a collective "tip pool" that is subsequently divided up among the bartenders according to a formula that takes into account the number of hours worked by each bartender. Mr. Zink, in what appears to be his primary mode of compensation from his tavern businesses, shares in the tip pool with the other bartenders according to the formula. Although

Mr. Zink has received modest K-1 distributions from his tavern businesses, he does not take a salary from either entity.

The named Plaintiffs are four former employees of No Idea and Don't Know. With the exception of Astrid Garrison, who was employed as a sous chef at Don't Know, the Plaintiffs are bartenders who formerly worked at Don't Know and No Idea. Plaintiffs allege that while they were employed by No Idea and Don't Know, Defendants unlawfully deprived them of wages under federal and state law. Specifically, Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), MD. CODE ANN. LAB. & EMPL. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), MD. CODE ANN. LAB. & EMPL. §§ 3-501 *et seq.*[1] On February 14, 2010, Brian Emar joined the lawsuit as an opt-in Plaintiff, and on February 19, 2009 filed a consent form pursuant to 29 U.S.C. § 216(b) of the FLSA.

At the crux of Plaintiffs' case is their contention that, although Mr. Zink frequently worked alongside the bartender Plaintiffs and contributed to the collective tip pool, he was prohibited from retaining any of those tips as a result of his status as the owner of the Taverns. Essentially, Plaintiffs argue that because Mr. Zink is the owner of the Taverns, he is precluded from receiving tips from the tip pool while simultaneously taking a "tip credit" under the FLSA and the MWHL.[2]

---

[1] Plaintiffs, in Count VII of their Second Amended Complaint, have also sued for the common law tort of conversion. However, in their Response to Defendant's Cross Motion for Summary Judgment they withdrew this claim. *See* Pls.' Resp. to Cross Mot. Summ. J. at 34 n.18, ECF No. 55). In addition, Plaintiffs have also withdrawn some of their claims under Count III, which seeks relief under the MWPCL. *See id.*; *see also* discussion *infra* at Motions for Summary Judgment—Analysis, Part II.

[2] The FLSA generally requires employers to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). However, there exists an exception for employers who employ people working in a "tipped occupation." Those tipped employees must receive at least the minimum

Because Defendants have filed a motion to decertify the collective action on the ground that some of the plaintiffs are not similarly situated, a brief discussion of the facts and circumstances surrounding each individual plaintiff's employment with the Taverns is warranted.

Plaintiffs Tara Gionfriddo, Eric Gilbert, and Aaron Zetzer are all former bartenders at the Taverns. Their claims are identical—they argue that they were unlawfully deprived of wages under federal and state law as a result of Mr. Zink's participation in the tip pool—that is, because Mr. Zink is the owner of the Taverns, he is prohibited from taking any share of the money collected in the tip pool. Plaintiff Brian Emar, who joined this action as an opt-in plaintiff, is a former bartender at both No Idea and Don't Know. He claims that during the time he worked at the Taverns, he received no wages at all, aside from the tips he retained after the tip pool was divided amongst the bartenders. Plaintiff Astrid Garrison's claims are substantially different from the other bartender plaintiffs. As previously mentioned, she worked as a sous chef at Don't Know. As a sous chef, she did not participate in any tip pooling arrangement, but rather, was paid wages in the form of checks and cash. Garrison's claims center on the argument that she did not receive proper overtime and regular wage compensation.

Because the makeup of this collective action will substantially affect this Court's analysis, Defendants' Motion to Decertify will be addressed first, with the cross motions for summary judgment discussed second.

## MOTION TO DECERTIFY—STANDARD OF REVIEW

Collective action lawsuits brought under the Fair Labor Standards Act have been described as "a unique species of group litigation" that differs from the more common class

---

wage, but their employers are permitted to pay them less than the minimum wage so long as the tips the employees receive make up the difference between the tipped wage rate and the full minimum wage. This is known as a "tip credit." 29 U.S.C. § 203(m); *see also* discussion *infra* at Part I.B.

action suits brought under Rule 23 of the Federal Rules of Civil Procedure. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807 (3d ed. 2005). Under the FLSA, a plaintiff may bring an action on behalf of himself and other employees so long as the other employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b) (A FLSA collective action "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). As this Court has previously indicated, a two-step inquiry is employed in deciding whether to certify a collective action under the FLSA:

> First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action.

*Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted). The second, more "stringent" phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and is often referred to as the "decertification stage." *See Syrja v. Westat, Inc.*, __ F. Supp. 2d __, 1956 WL 95230, at *3 (D. Md. Nov. 2, 2010).

Generally, plaintiffs bear the burden of showing that their claims are "similarly situated," but courts have ruled that "similarly situated" need not mean "identical." *See, e.g.*, *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). Nevertheless, district courts have broad discretion to determine whether a collective action is an appropriate means for prosecuting an FLSA cause of action. *Id.* at 1219; *see also Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D.Va. 2006); 7B Charles A. Wright, Arthur R. Miller & Mary K.

Kane, *Federal Practice and Procedure* § 1807, n.44 (3d ed. 2005). In making this determination, courts typically consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Rawls*, 244 F.R.D. at 300 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1081 (D. Kan. 1998)).

## MOTION TO DECERTIFY—ANALYSIS

As a preliminary matter, it should be noted that this Court has never entered an order conditionally certifying this collective action, and the Plaintiffs have never explicitly requested such a certification. However, on October 29, 2009, Plaintiffs filed a Motion to Facilitate Identification and Notification of Similarly-Situated Employees. *See* ECF No. 8. This Court heard oral argument on this and other motions on January 21, 2010, and orally granted Plaintiffs' motion. *See* Order, ECF No. 19. As a result, it appears as though the parties essentially operated under the assumption that a conditional certification had been granted. On February 4, 2010, this Court approved a Notice letter that was subsequently sent to former and current bartenders employed by No Idea and Don't Know apprising them of their right to opt-in to the collective action lawsuit. *See* Notice, ECF No. 21. Only one person decided to opt-in, pursuant to 29 U.S.C. § 216(b), in addition to the four named plaintiffs. That person is Brian Emar. As a result there are a total of five plaintiffs with varying minimum wage and overtime claims. Extensive discovery was conducted with respect to each of the five plaintiffs, and Defendants have never opposed or challenged a conditional certification. For purposes of this Memorandum Opinion, this Court will treat its January 21, 2010 Order as a conditional certification of this collective action brought under the FLSA.

However, notwithstanding a conditional certification, Defendants have filed a Motion for Decertification, and this Court will now embark on the second, and more stringent, prong of the certification (or decertification, as the case may be) analysis.

With regard to Plaintiff Emar, Defendants spend much of their argument capital on the proposition that Mr. Emar is not a properly joined party to this lawsuit and, as a result, should be dismissed or stricken from participating in this collective action. Essentially, Defendants argue that Mr. Emar's opt-in consent notice is insufficient to join him as a plaintiff. However, because Mr. Emar's claims are sufficiently disparate from the other bartender plaintiffs' claims, this Court need not address this matter.[3]

The central issue in this case is Mr. Zink's participation in the tip pooling arrangement between the bartenders at the Taverns, and whether or not that participation is illegal under the FLSA and Maryland state analog statutes. Mr. Emar does not specifically contend that he is owed wages as a result of Mr. Zink's participation in the tip pool, but rather alleges that during his tenure at both No Idea and Don't Know, he was not paid any wages at all, and as a result, is owed the full minimum wage for all hours worked at the Taverns. In contrast, Plaintiffs Gionfriddo, Gilbert, and Zetzer received wages and their claims rest on the alleged illegality of the tip pool participation by Mr. Zink, the owner of the Taverns. These three plaintiffs are clearly similarly situated as their claims all rest on the same facts and common questions of law. *See Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) ("A group of potential plaintiffs are 'similarly situated' when they together were victims of a common policy or scheme or plan

_____

[3] Judge Blake of this Court recently noted that "[n]either the United States Court of Appeals for the Fourth Circuit nor the United States District Court for the District of Maryland has addressed whether filing a written consent form is sufficient to add plaintiffs as parties in an FLSA lawsuit." (citing, and finding persuasive *Harkins v. Riverboat Servs. Inc.*, No. 99 C 123, 2002 WL 32406581 (N.D. Ill. May, 17, 2002), which held that "the act of filing a written consent alone does not automatically join an individual to the lawsuit").

that violated the law."). Here, Mr. Emar's claims would involve "substantial individualized determinations" that would not lead to efficient adjudication. *Purdham v. Fairfax County Pub. Sch.*, 629 F. Supp. 2d 544, 549 (E.D. Va. 2009). As a result, although Mr. Emar very well may have legitimate claims under the FLSA, this action is not the proper vehicle to raise those claims, and he is therefore dismissed, without prejudice, from this collective action. *See* 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1807, n.74 (3d ed. 2005). With respect to Mr. Emar, Plaintiffs have requested that, in the event this Court dismisses his claims without prejudice, his claims be equitably tolled to the time he filed his opt-in consent form. This Court grants that request, and Mr. Emar's claims will be tolled as of February 19, 2010.

In even starker contrast to the similarity of the tip pool claims brought by Gionfriddo, Gilbert, and Zetzer, Plaintiff Garrison worked as a sous chef at Don't Know, and claims that she was denied overtime and is owed unpaid wages. Garrison never received tips in her position as a sous chef, and was unquestionably never part of a tip pool. In short, her claims are wholly unrelated to the bartenders' claims and her continued presence in this collective action would not contribute to an efficient adjudication in this matter. As a result, Plaintiff Garrison must be severed from this collective action, and her claims for overtime and unpaid wages will proceed in a separate action. In sum, Defendants' Motion to Decertify (ECF No. 61) is granted with respect to Brian Emar and Astrid Garrison.[4]

---

[4]  In their Motion to Decertify, and with the exception of a single sentence alluding to disparate factual issues with regard to Gionfriddo, Gilbert, and Zetzer, Defendants do not argue that this action should be decertified with respect to those three plaintiffs. In short, in their written submissions, Defendants essentially concede that this case may proceed as a collective action with regard to Gionfriddo, Gilbert, and Zetzer. Moreover, during oral argument on February 9, 2011, Defendants specifically conceded this point.

Finally, on September 10, 2010, Plaintiffs filed a Motion for Leave to File a Second Amended Complaint. This Court granted that motion for reasons stated on the record at oral argument on February 9, 2011, *See* Order, ECF No. 63, and Plaintiffs subsequently filed a Second Amended Complaint (ECF No. 64). The only difference between the First Amended Complaint, ECF No. 26, and the Second Amended Complaint, ECF No. 64, is the introduction of a Maryland Wage Payment and Collection Law claim on behalf of Astrid Garrison. On February 16, 2011, after oral argument, Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint, or in the Alternative, Defendants' Motion for Summary Judgment. *See* ECF No. 66. Because the Second Amended Complaint only differs from the First Amended Complaint with respect to the single additional claim mentioned above, the thrust of Defendants' Motion to Dismiss is founded on the argument that Ms. Garrison's new claim fails because the section of the MWPCL on which her claim relies, does not create a general private cause of action.[5] However, because this Court concludes that Ms. Garrison is not similarly situated to the three bartender plaintiffs, and is therefore severed and dismissed from this action, this Court need not consider the argument raised in Defendants' Motion to Dismiss. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, or in the Alternative, Defendants' Motion for Summary Judgment, ECF No. 66, is denied as moot, and this Court will now move on to the substantive legal issues raised in the parties' cross motions for summary judgment.

## MOTION FOR SUMMARUY JUDGMENT—STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact

---

[5]  In their Motion to Dismiss, ECF No. 66, Defendants incorporate and rely on their previously submitted Cross Motion for Summary Judgment, ECF No. 51, with regard to all other claims raised in the Second Amended Complaint.

is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law."  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).

## MOTIONS FOR SUMMARY JUDGMENT—ANALYSIS

### I.  The Fair Labor Standards Act Claims

Congress enacted the Fair Labor Standards Act in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Pub. L. No. 75-718, 52 Stat. 1060 (1938) (codified as amended at 29 U.S.C. §§ 201 *et seq.*). To this end, the FLSA generally requires employers to compensate employees for all of the hours worked, at a rate that is not less than the federal minimum wage rate. *See* 29 U.S.C. § 206(a)(1). Because compliance with the FLSA is impossible without certainty as to the number of hours employees actually work, the FLSA requires that employers "make, keep and preserve" records of wages, hours, and "other conditions and practices of employment. . . ." 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(7)-(9). Any employer who violates Sections 206 or 207 of the FLSA is liable to the affected employees for unpaid wages and liquidated damages. 29 U.S.C. § 216(b). Injunctive relief may also be ordered against an employer who violates any provision of the FLSA. 29 U.S.C. § 217.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)). Federal courts almost universally state that this definition is to be interpreted broadly to achieve Congress's intent to provide a remedy to employees for their employers' wage and hour violations. *See, e.g.*, *id.*; *Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). The Supreme Court has stated that the determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). Courts generally look at the "economic reality" of an individual's status in the

workplace before determining liability. *See Schultz*, 466 F.3d at 304; *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). The economic reality of an individual's status as an employer may be determined by examining a number of factors—such as the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship. *See Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998).

**A. Threshold Matters**

*i. Statute of Limitations, Willfulness, and Damages*

Actions for alleged violations of the FLSA's minimum wage provisions "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). As such, the FLSA provides for two potential limitations periods, the application of which turns on whether the FLSA violations were conducted "willfully." Moreover, in addition to the limitations period, the issue of willfulness "can impact the computation of unpaid overtime compensation under the FLSA." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011). Predictably, both parties take opposite positions with regard to the issue of whether Mr. Zink's participation in the tip pool was "willful"—Plaintiffs argue that his actions were willful, and Defendants contend they were not.

In 1988, the Supreme Court of the United States addressed the meaning of willfulness under Section 255(a) of the FLSA. In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), the Court held that in order to show willfulness, a plaintiff must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

[FLSA]." *Id.* at 133. Mere negligence on the part of the employer with regard to compliance with the FLSA is not sufficient to prove negligence. *Id.*

Here, the parties have presented conflicting evidence regarding the issue of willfulness. Plaintiffs have introduced evidence suggesting that Mr. Zink's conduct was willful, or at the very least reckless, and Defendants have presented evidence that could plausibly lead to a conclusion that Mr. Zink's conduct was merely the product of a flawed interpretation of the FLSA, was not reckless, and therefore not willful. In short, it would be premature to hold, as a matter of law, that Mr. Zink's conduct was or was not willful. Accordingly, this Court finds that the issue of willfulness is an issue of material fact to be determined at trial.

Because Plaintiffs have moved for partial summary judgment, essentially as to liability only, it is unnecessary for this Court to make a determination regarding the applicability of the differing limitations periods. Because Plaintiffs filed this action on July 1, 2009, the statutory look-back period under the FLSA will commence on either July 1, 2007, or July 1, 2006, depending on the issue of willfulness. Only one defendant's claims will be affected by this distinction. Plaintiff Aaron Zetzer began working for the Defendants in June of 2007, so, if Mr. Zink's conduct is found to be not willful, and the two year limitations period is used, Zetzer will be barred from asserting claims that arose prior to July 1, 2007. The other two remaining Plaintiffs, Gionfriddo and Gilbert, began working for Defendants after July 1, 2007, and would not be affected by a two or three year statute of limitations.

With regard to damages, this Court's opinion only addresses Defendants' liability, and will leave for a further proceeding the issue of the calculation of damages. As previously mentioned, a willfulness determination regarding the Defendants' actions will impact any damages award, *see Desmond*, 630 F.3d at 357, and as such, is best left for trial.

### ii. Single Enterprise

To be protected by the strictures of the FLSA, an employee must be "employed in an enterprise engaged in commerce." 29 U.S.C. § 206(a)(1). An enterprise is "engaged in commerce" if, among other things, it has annual gross revenues of $500,000 or more. 29 U.S.C. § 203(s). It is undisputed that the No Idea Tavern, which is owned by J.R. Zink, Inc. has never had annual gross sales in excess of $500,000. *See* Defs.' Cross Mot. Summ. J. at 12, 19 (ECF No. 51); Pls.' Mot. Summ. J. Ex. 10, ECF No. 55-10. The Plaintiffs may nevertheless overcome this obstacle if they are able to show that, for the relevant years in question, the Taverns were a "single enterprise," and that their combined revenues exceeded the statutory limitation.

Under the FLSA, a "single enterprise" consists of "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose . . . whether performed in one or more establishments or by one or more corporate or other organizational units." 29 U.S.C. § 203(s)(1)(A)(ii). The United States Court of Appeals for the Fourth Circuit has summarized the single enterprise requirements: "The [FLSA] states that for an enterprise to be a 'single enterprise' under the Act it must conduct (1) related activities, (2) performed under unified operations or common control, and (3) for a common business purpose." *Brock v. Hamad*, 867 F.2d 804, 806 (4th Cir. 1989).

In this case, it is clear that J.R. Zink, Inc. and Jason Zink, LLC fit the statutory definition of a single enterprise. It is hardly worth reciting the fact that the two Taverns conduct related activities—but Defendants make the argument, and this Court will address the issue. Both entities operate as taverns in the same neighborhood in Baltimore City. They both serve food and beverages to a similar clientele, and perform similar functions. In *Brock*, the Fourth Circuit held that the renting of separate houses and apartments by a single person constituted "related

activities" under the FLSA. *Id.* Moreover, the United States Court of Appeals for the Fifth Circuit, in *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984), found that related activities existed between five separate hotels, located in five different cities, and owned by five different corporations, and therefore constituted a single enterprise. *Id.* at 970-71. The facts of this case suffice to conclude that the Taverns conducted related activities. *See id.*; *see also Morgan v. Speakeasy, LLC*, 625 F. Supp. 2d 632, 647-48 (N.D. Ill. 2007) (finding two entities engaged in the restaurant business conducting "related activities"); *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 915 (9th Cir. 2003) (companies that both provide home healthcare services conducted related activities).

The second element of the single enterprise analysis, whether the Taverns performed under unified operations or common control, is also met. Although it is questionable whether the Taverns operated under unified operations, there is no question that Mr. Zink had common control of the Taverns. Common control exists "where the performance of the described activities is controlled by one person or by a number of persons, corporations, or other units acting together." 29 C.F.R. § 779.215. Here, there is no question that Mr. Zink, the sole owner of both taverns, exercised common control. Defendants, in their Cross Motion for Summary Judgment admit that "Mr. Zink generally supervises and *controls* both Don't Know and No Idea. Mr. Zink is not an absentee owner or investor. He works on site, and contributes to the functioning of *both* establishments." Defs.' Cross Mot. Summ. J. at 13, ECF No. 51 (internal citations omitted) (emphasis added). Moreover, as the Fourth Circuit noted in *Brock*, "common control 'exists where total ownership is vested in a single person, family unit, [or] partnership.'" *Brock*, 867 F.2d at 807 (quoting 29 C.F.R. § 779.223).

Finally, multiple employers will be considered a single enterprise if they are operated for a common business purpose. The Fourth Circuit, in citing the administrative regulations issued under the FLSA, has noted that "[A] common business purpose includes activities which are directed to the same business objective or to similar objectives in which the group has an interest." *Id.* (quoting 29 C.F.R. § 779.213). Here, both Taverns clearly have the same business objective, that is, to sell food and beverages to paying customers. Defendants attempt to argue that the two Taverns are, in reality, competitors of one another with regard to restaurant and bar patrons. *See* Defs. Reply to Pls.' Mot. Summ. J. at 13, ECF No. 58. A similar argument was entertained and rejected by the United States District Court for the Northern District of Illinois is *Morgan v. Speakeasy, LLC*, 625 F. Supp. 2d 632, 648 (N.D. Ill. 2007). In that case, the court noted that there was no evidence that one of the restaurants was established in order to compete with the other. Similarly, there is no such evidence in this case, and it would strain credulity to believe that a sole owner of a tavern would open a second tavern with the object of driving business away from his earlier established business.

In sum, No Idea and Don't Know belonged to Mr. Zink and were operated for his personal profit. He was the "top man" at the Taverns, and this Court considers them a single enterprise under the FLSA. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *see also Brock*, 867 F.2d at 807. When the annual gross revenues of the two establishments are added together, they more than satisfy the $500,000 threshold of the FLSA.

## B. An Employer-Owner May Not Share In An Employee Tip Pool Under The Fair Labor Standards Act

As previously mentioned, the Fair Labor Standards Act was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for

health, efficiency, and general well-being of workers."  Pub. L. No. 75-718, 52 Stat. 1060 (1938) (codified as amended at 29 U.S.C. §§ 201 *et seq.*).  To effectuate this aim, the FLSA requires that employees be paid a minimum wage of $7.25 per hour.  29 U.S.C. § 206(a)(1)(c).  An exception exists for "tipped employees."  "Tipped employees" are those employees that are "engaged in an occupation in which [they] customarily and regularly receive[] more than $30 a month in tips." 29 U.S.C. § 203(t).  Those employees are required to receive at least the minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a "tip credit" to meet the $7.25 per hour minimum wage requirement.  29 U.S.C. § 203(m).  In other words, an employer satisfies the FLSA if he pays his tipped employees at least $2.13 per hour, and that wage, in conjunction with the tips they receive, make up at least the $7.25 per hour minimum wage.  Employees are permitted to share tips through a tip pooling or tip splitting arrangement so long as each employee customarily receive more than $30 per month in tips.  29 C.F.R. § 531.54. However, "[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'"  *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)).  In the present case, the bartenders at the Taverns participated in a collective tip pool that was divided up according to a formula that accounts for the hours worked by each bartender.

Mr. Zink worked as a bartender at the Taverns and concedes that he participated in the tip pool.  Mr. Zink also concedes that he satisfies the definition of "employer" under Section 203(d) of the FLSA.  *See* Defs.' Cross Mot. Summ. J. at 24, ECF No. 51-1.  Both parties agree that bartending is typically a tipped occupation.  Where the parties disagree, however, is on the question of whether an "employer" may also be a "tipped employee" and receive a share of the

tip pool. Defendants argue that despite his status as an employer, Mr. Zink is nevertheless permitted to share in the tip pool because he can simultaneously be an "employer" *and* a tipped "employee" under the FLSA. In other words, because Mr. Zink works as a bartender, a position that ordinarily receives tips, his status as an employer is immaterial to the FLSA analysis. Plaintiffs respond by arguing that allowing Mr. Zink to simultaneously benefit from the "tip credit" exception to the minimum wage requirements and at the same time personally receive tips would be completely contradictory to the purpose behind the FLSA. Plaintiffs maintain that Mr. Zink, as the sole owner of the Taverns, and the Plaintiffs' employer, simply may not participate in a tip pool, and that to the extent he did participate in a tip pool, that tip pool is invalid under the FLSA. In short, the question before this Court is to what extent, if any, an owner-employer who also tends bar is permitted to receive tips from an employee tip pool.

This precise question is an issue of first impression in this District and in the Fourth Circuit, but not elsewhere. Every court that has considered the issue has unequivocally held that the FLSA expressly prohibits employers from participating in employee tip pools. "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002); *see also, e.g.*, *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 652 (N.D. Ill. 2007) (quoting *Chung*, 246 F. Supp. 2d at 230); *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 308-09 (S.D.N.Y. 1998) (finding tip pool invalid as a result of general manager's participation); *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind.1998) ("an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips").

Despite the clear weight of authority holding that employers may not participate in employee tip pools, Defendants seek to carve out a novel legal question where there is none. Essentially, Defendants argue that the analysis undergirding the cases holding that employers may not participate in employee tip pools is fundamentally flawed because those courts considered the issue under the faulty premise that a particular individual may only be an employer *or* a tipped employee, and not both. *See* Defs.' Cross Mot. Summ. J. at 26-34, ECF No. 51-1; Defs.' Reply at 16, ECF No. 58. Defendants rely on a textual interpretation of the FLSA, and argue that as a result of the Act's broad definition of "employer," it is also possible for an employer to be a tipped employee if that person participates in an activity that customarily receives tips, such as bartending. *Id.* In this regard, Defendants are mistaken—the cases holding that employers may not participate in employee tip pools do not take the position that under no circumstances will an "employer" be prohibited from participating in a tip pool—indeed, in close cases courts have gone to great lengths to determine whether a person who possesses some managerial control may be considered a "tipped employee" under the FLSA. For example, in *Rudy v. Consol. Restaurant Cos.*, No. 3:08-CV-0904-L, 2010 WL 3565418 (N.D. Tex. Aug. 18, 2010), the district court considered whether maître d's, who possessed some managerial authority over regular restaurant waiters, were properly considered "tipped employees" as a result of their significant interaction with customers. *Id.* at *4-9. Similarly, in *Davis v. B & S, Incorporated*, 38 F. Supp. 2d 707, 714 (N.D. Ind.1998), the court found that a material fact existed with regard to whether a general manager could participate in a tip pool and declined to grant summary judgment to the employee. *Id.* at 717 ("because issues of fact remain as to whether [the general manager] was a 'tipped employee' with regard to his work with the disc

jockeys, the validity of his participation in the tip pool . . . cannot be resolved as a matter of law").

In some close circumstances, this Court believes that it may be, at least theoretically, possible to be an employer under the FLSA and at the same time share in a tip pool. However, this is not a close case. Mr. Zink is the sole owner of both Taverns, and is unquestionably an "employer" under the FLSA. This Court need not evaluate the extent of Mr. Zink's bartending activities because it would be anathema to the purpose behind the FLSA to simultaneously allow him to take tips from a collective tip pool that was set up to allow him to pay his employees at a rate substantially below the minimum wage. As the sole owner of the Taverns, Mr. Zink is essentially the sole beneficiary of the "tip credit" provision of the FLSA. As such, he is prohibited from participating in the tip pool at the Taverns. A contrary finding, allowing an owner to participate in a tip pool, would broaden the FLSA's tip credit provisions to a point where they would become meaningless.

## II.  State Law Claims

As a result of this Court's decision to decertify this collective action with respect to Plaintiffs Emar and Garrison, there remain only three Plaintiffs in this case, Gionfriddo, Gilbert, and Zetzer, who were employed as bartenders at the Taverns. There are three state law claims that remain pending as to these three plaintiffs: Counts II and VI of the Second Amended Complaint seek relief under the Maryland Wage and Hour Law ("MWHL"), MD. CODE ANN. LAB. & EMPL. §§ 3-401 *et seq.*, and Count III seeks relief under the Maryland Wage Payment and Collection Law ("MWPCL"), MD. CODE ANN. LAB. & EMPL. §§ 3-501 *et seq*.

With respect to Count III, the MWPCL claim, Plaintiffs have withdrawn their claims under Count III with respect to the tips taken by Mr. Zink from the tip pool, *see supra* note 1,

and the only other claims made under Count III relate to Astrid Garrison who has been severed from this collective action. As a result, Plaintiffs' Motion for Partial Summary Judgment is denied as moot with respect to Count III.

Count VI of the Second Amended Complaint alleges that Defendants failed to pay the bartender Plaintiffs proper overtime wages pursuant to Sections 3-415 and 3-420 of the MWHL. However, as Defendants aptly point out, Section 3-415 of the MWHL specifically exempts "restaurants" from its overtime payment provisions. *See* MD. CODE ANN. LAB. & EMPL. § 3-415 ("This [Payment of overtime to employees] section does not apply to an employer that is . . . a restaurant."). In response, Plaintiffs argue that both Don't Know and No Idea are not restaurants, but rather, taverns. This argument is pure semantics. Both Don't Know and No Idea serve food prepared in their kitchens to paying customers, employ waiters and bartenders, and otherwise act—under any definition—as restaurants. In short, no legal significance can be drawn from the fact that Mr. Zink's establishments choose to call themselves "taverns" instead of "restaurants." As a result, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 45) is denied with respect to Count VI of the Second Amended Complaint, and Defendants' Cross Motion for Summary Judgment (ECF No. 51) is granted with respect to Count VI.

Finally, in Count II of the Second Amended Complaint, Plaintiffs allege that Defendants violated the MWHL by improperly participating in the tip pool. The arguments propounded by Plaintiffs on this count essentially mirror those made with respect to the FLSA. In the same vein, Defendants argue that the MWHL does not prohibit employers from participating in an employee tip pool. In light of the congruent nature of the FLSA and the MWHL, *see Newell v. Runnels*, 967 A.2d 729, 771 (Md. 2009) (MWHL is the "State parallel" of the FLSA), this Court

must conclude that the MWHL was also violated as a result of Mr. Zink's participation in the employee tip pool.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Decertify (ECF No. 61) is GRANTED; and Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 66) is DISMISSED as moot. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 45) is granted as to Counts I, II, and IV of the Second Amended Complaint. Plaintiffs Motion for Partial Summary Judgment is denied with respect to Counts III, V, and VII, as those counts are now moot. Count VIII of the Second Amended Complaint was withdrawn by the Plaintiffs. Defendants Cross Motion for Summary Judgment (ECF No. 51) is granted with respect to Count VI, and denied as to all other counts. A separate Order follows.

Dated: March 11, 2011

/s/_____
Richard D. Bennett
United States District Judge